The Hon. B, Hardin
presented the following petition fora re-hearing: ■
The appellee, Hardin, for himselfand also;for Larue, respectfully solicits of the coart, a re-hearing of thk cause. The contract between Hardin and Rust, this court has, in substance, decided void, because the same amounts to champerty.
Hawkins defines that offence in the following words: uAnd now we are cometo the second species of maintenance, called champerty, which is the unlawful maintenance of a suit, in consideration of some bargain to have part of the thing in dispute, or some profit out of it.” 1 Haw. 545. The same definition is given by Coke 368. Viner gives the same definition, 15th' volume, 149. Elackstone, 4lb volume, page 135, gives in sub* stance the same definition, except, that he says that the *419 ehamperter' is to carry on the suit at his own ex-pence. -
Now, although the definition of Rlackstone is much, more favorable to prove the position hereafter attempted to be established, than Hawkins’, &c.; yet it is be-, lieved that Hawkins is correct, because whatever act would amount to maintenance, would, if the person guilty of the maintenance were to get as a consideration therefor, part of the thing s»e.d for, amount to the of-fence of champerty. ' The converse of the proposition (whatever fugitive dicta there may be to the contrary) must be equally true, that no agreement for a part of' the thing in dispute, can be champerty, unless the con-, sideration given for such part be maintenance.
To enumerate all the intermedlings in a suit, which, amount to maintenance, is surely unnecessary. The object both of the common law and the- statutes of England, was to prevent the officious interference of a person, in a suit to which he was no party, and to prevent powerful men from so interfering, as to pervert justice. Hence we see, that it was not maintenance for a person to assist his relation, whether by blood or affinity, or a master his servant, &c. -Nor was the rule intended to prevent a person involved in law to obtain advice and the assistance of persons learned in the law. See 15 vol. Yiner, 148.
It 'will be coMgnded, that this contract does not. come within the common law northe statutes of England, because there must be the lis pendens at common law. See Haw, 537. Although Hawkins seems 4© suppose money advanced before suit commenced, is within the mischief; yet h»- admits the same is not within the law. The different statutes, of England, which the court will see in 1 Hawkins 64.7, expressly speak of the suit then pending. The court will see from the contract,, that th.e same was made before suit commenced!
Tlie next positionewhich will be attempted to be’supported, is, that the consideration Hardin was. to give Rust, was not maintenance; but was,such duties.as professionally he could legally render. Although the-situ-. alian of a lawyer- in this country, is widely different from either a counsellor or an attorney in England; because it embraces parbof both characters, with no law prescribing the limifsof-his fees, or out of what fund the- client shall pay, ,1’ehyisSg the same free like' other *420 contracts; yet it is believed, that-from'a careful exam» ina^on of the English authorities, keeping always in jnind the reason upon which the doctrine of maintenance is founded, the court will perceive thát this contract does not come within the definition of cham-perty, The common law gave the right of a counsel-lor to argue his causes in court; and to the statute of the 28th Ed. C. 11, there is this proviso: “ But it may not he understood hereby, that any person shall be prohibited to have counsel of' pleaders, or of learned men in the law, 'for his fee, or of his parents and next friends.” In 1 Hawkins 548, it is said., that giving part of the land in suit, after the end of it, to a counsellor for his wages, is not within the meaning of it, if it evidently appears that there was no kind of precedent bargain, relating to such gift. Tliere appears to be no adjudged case to support this; but it is taken from 2 Institutes 5G4.' In 5 Comyns 18, we see the same text, and from the same authority. Every research has been -made, which has been practicable, and no other dictvm can be found to the same effect, either in England or America.
In opposition to that text of law, we find in 15 Viner 149, an adjudged case, the 32-Charles II. “a counsel-lor took a bond of his client, conditioned to convey one half to him of the estate, on recovering the whole. The court declared that the bond ought to secure what was actually disbursed, and make a reasonable allow anee for care, &c. in the recovery.”
The court will see from the principle of the above case, that the-court did not consider it champerty; because, if they had, they must have declared the bond void. They declare that the bond shall secure what ought justly to be paid; and on account of the undue advantages' taken by the counsellor of his client, the chancellor prevents the further enforcement of the contract' in the samo case cited, in Newland on Contracts, page 457, when the author, is investigating the power of the chancellor over contracts unfairly made, between a counsellor and his client. In 5 Comyns 18, it is said, that it is not maintenance for a father to en-feoffhisson of the land pendente lite, for his assistance. What is the reason of this rule? Answer; because it is not maintenance for the son to assist the father, and he is expressly within the exceptions to the statute above cited.
*421 Bpon the score of authority, it is believed not to be champerty, fora counsellor to get part of the thing in guit for his fee; upon-principle,. there can be no reason for it. Cannot the person about to go to law, sell the property in dispute, or any part of it?1 He certainly can. Does the law authorising a man to engage counsel for his fee, restrict him as to the fund out of which he shall be paid? It does not. Is he, then, not at liberty to select that fund from- which to make compensation, that will best suit his convenience? But lastly and emphatically, does the counsellor give unlawful maintenance as the consideration tor an interest in the matlér in dispute; for without that, it cannot be champerty? The answer must be, that he does not; but gives a consideration as lawful as that of money.
There can be no reason for extending the law of cham-perty to counsellors, when in the discharge of their professional duties. Ifthey be evilly disposed persons, they will encourage litigation as well for a fee in money or ether thing, as a part of the matter in. dispute. It is frequently more convenient for thelitiglnt to give, contingently, part in contest; because he may not have any thing else to give, and without the aid of the matter in contest, he can never sue for his right, not having otherwise the means to employ counsel, the precise case here. Rust declares that he had tried to employ counsel, and for want of funds he could not do it; and Hardin' wras the only man he could meet with,> who would undertake it for a part of the matter in dispute.
There is yet another point of view in which this question ought to be considered. Is it maintenance for a person to assist in the prosecution of a suit, when he has an interest in the subject-matter sued for, before the suit was commenced, whether that interest be equitable or legal? The answer must be in the negative. See 8 Johnson 170. Now in this case, Hardin had an interest in the equity of redemption of these negroes, before the suit was commenced, and that interest for services which, in his profession, he had a right to render.
' The court will see, that the statutes against champerty in England, so far as the same respect land, are reenacted in New-York.
The case relied on by the court in their opinion, is taken from 2 Atkinsj itbeing the same relied on by Mad-d.Qcks, That was a coillract which related, in part, to a *422 large landed estate, and the person purchasing was neither an attorney nor counsellor. ■
There is yet another consideration, worthy the attention of the court. At common law, it was maintenance to buy a thing in suit or a chose in action; yet these contracts have ever been held valid in equity, and at law they are now recognized. Is not the whole common law doctrine of champerty and maintenance, as it respects the buying and selling of every thing not connected with land, whether the title to the same he legal or equitable, in suit or not, .virtually and substantially overruled and. rendered entirely obsolete? No <case can be found, unconnected with land, either in England or America, for the last one hundred and'fifty years, declaring those contracts void;,but on the other hand, numerous cases, both in law and equity, supporting them. As it respects the selling land, when the grantor was out of possession, there was an express statute of Henry the eighth, against it. A reference is made to Chitty on Bills, page 9 to 13; 1 Fonblanque 213 to 216; and 4 Dunford and East 340. ■ The court is also referred to the different suits of Rogers against Conner and Conner against Rogers. They will see, that Rogers purchased from Henning’sheirs', their interest in their father’s estate, with a view to sue for the same, and agreed to give for it one hundred pounds. Both those contracts were supported in the first instance, by the court of appeals. After an interlocutory decree, Conner amended his answer, and stated a purchase from one of the heirs, who, at the time he sold to Rogers, was an infant. The court permitted the amendment, and altered the decree as to one half the estate. The purchase of Rogers would, according to the notions of the common law, have been maintenance; yet this court sustained it. The contract between Hardin and Rust, does not come within the statute of Edward; for in the language of the statute, the suit must be hanging in court when the bargain is. made. So has it been expounded in 2 Institutes 664, above referred to. Not so in this case. If tested by the common law, it is not within the same; first, because the matter must be in plea; secondly, equity and the courts of common law following its rules, has overruled that part of the common law.
Is not the usage and custom of this country and Vir-. ginia, nay, all America, against it for a number of years. *423 back, and is that to have no weight with .the court? What is it that gives, in nine tenths of the cases, liens general and particular, when none exist at common law ? Aqe they given by statute? No; but by usage and custom. What statute authorised a court of equity and then a court of law, to recognize an assignment of choses in action in England, and some of the states of America? Answer; none but the usage and custom of trade. According to the fair exposition of the common law, after the statute'made a bond assignable, the assignor would not be liable if the obligor proved insolvent, unless it was so agreed in the assignment; yet the usage, custom and universal understanding to the contrary, has induced the courts of this country to decide differently. A statute has ever been considered as virtually repealed, if there be no instance of the same having been enforced for a series of years; and I ask the court, with great deference for the opinion given by them, if a single adjudged case can be found, applying the law of maintenance and champerty to a counsellor, since the statutes were enacted, or applying the statutes to any purchase unconnected with land, for the last two hundred years? If there be such an one, your petitioner has not been able to find it; and has not this court repeatedly said, that an obsolete statute shall not be enforced?
The opinion given by the court, intimates that the amended answer of Larue, is,, in fact, a supplemental answer, for a specific execution of a contract. Your petitioner is not advised sufficiently to say, that in any case, an amended answer is ever called a supplemental answer. Waiving the question wdiether the same be an amended or supplemental answer, what is the substance and object of it? Is it to obtain a specific execution of the contract between Hardin and Rust? I answer ho; because Larue, who was entitled to Hardin’s claim, was in possession of the negroes. If Hardin had obtained possession of the negroes, could he have filed a bill for a specific execution of the contract between him and Rust? Certainly not; because, being entitled to a third, and having them in possession, there would be nothing to sue about. What was it, the», that made it necessary for Larue to amend his answer? Nothing but to obtain an alteration of the decree as to ene third in dispute; and.it was only the decree that was , *424 already pronounced, which made it necessary for hiftl to his claim under Hardin before any court, because his title to one third under the claim, was complete when coupled with possession; but the decree would have wrongfully taken the negroes out of his possession, w ithou t he exhibited this new matter to the court.
The court too decided every part of this contract on the part of Hardin, to be fair and correct. That it was an advantageous one for Rust, he admits; because it gave him two thirds of the negroes, when he could not engage counsel upon any other terms; that he had nothing else to give, he declares himself; and that for want of other means, he could get no other lawyer to undertake it; and it is apparent, from the whole case, that it was from his own importunity, Hardin engaged in it. In this kind of case, thus situated, it is believed the court will not feel disposed to apply the old, forgotten and obsolete doctrine of champerty and maintenance to it, unless the very letter of the law is so imperative, that the court cannot do otherwise. To turn the party round to a court of law, is, at once, to decide' against him, particularly as the court give him no lien upon the proper- • ty, until the suit at law is decided; because the whole-record shows Rust insolvent, and his contesting this claim, of Larue, under his contract made with Hardin, shows that he will do any and every thing within his power to defeat the claim entirely.
Your petitioner would have bowed with submission to the opinion of the court, and not have solicited a rehearing of this cause, had the point upon which the court decided, been made in the pleadings, or moved in argument, in either court; but as yet, he has had no op- ' portunity of being hes$d upon a point deeply implicating his character and feelings. Because, there is some reproach to be attached to the commission of the offence of which the court has said he is guilty; and if he must go out of court under the chagrin, mortification and humiliation of such a decision, yet the anguish would be greatly mitigated by the consolation and reflection, that he has been heard in his own defence. Upon an argument of the question he cannot promise much; but yet it will be recollected,- that some of the greatest inventions now known in the world, have commenced from rude and simple hints. One thing he will promise, that labor and diligence shall not be wanting on his part, to investigate *425 arid develop Ibis old obsolete: doctrine, buri.ed under tja'e rubbish of fwo hundred years. • ’
it is not e»-seniialto the then! be a suiircom-the'eon-was B1L' tered into,
contract, the counsel does D-0^°^1fajjS tion for his services,
fro the insolvcn-uf hisclh ent, a suit "at law would be fruitless, equity will sustain jurisdiction of his claim, & will decree a reasonable compensation in money, to be made out of the property recovered.
*425 - Your petitioner, although ever the Avócate for the tights of the judiciary, believing the independence, of the bench-to1 be thé sheet-anchor of all our liberties, cy4l, r'eligious and political, and at all times disposed to treat the bench with the highest respect; yet he hopes that if-will not be construed to be a departure from the above feelings and principles, if he should ask the court, if a ré-argument ought not to be desirable to themselves; first, because the point was not .made in the pleadings or argument; secondly, the decision was given upon law, against the usage and qustom of this country, upon a poiht never yét directly decided by any court; thirdly, there was not a full court, and the appellees have literally never been heard upon the question.
- For the above reasons, your petitioner humbly conceives that it is due to the appellees, that the court shóuld give them a re-hearing; but if not due to them ds a matter of right, he asks it as a matter of favor.
BEN. HARDIN.
A re-hearing was granted and re-argument had, and now, on the 22d of April, 1824, the following opinion was given:
We were more willing to grant another argument this causo, on account of the point on which the court decided against the appellees not having been made the pleadings, or relied upon expressly in the first guineal. At the re-argument, the question has been ably investigated, and the former opinion has been lously but respectfully assailed. But notwithstanding the force of argument employed, and the authorities lied on, however much we may be disposed to secure counsel, the stipulated reiArd for their services, espc-dally where the services, as in this case, have-been performed with diligence and professional skill, and have extended far beyond what a mere counsel or solicitor is bound to perform, yet we are constrained to adhere to our former opinion on the main question.
It has been urged, that the doctrine of champértv, especially as to personal estate, has been,’if not overturned, at least disregarded for the last century or two, and of course that it is obsolete.. It cannot be *426 ted that tlic doctrine has been abandoned; it continued in the English courts until the'revolution, and it will be seen by the^au’thorities cited by Chancellor Kent, in the case of Arden and others vs. Patterson, 5 John. Chan. Rep. 44, that many cases have been decided since, on the same principles, and Mr. Kent himselfhas investigated and approved the doctrine in the Case cited, as applicable to a contract between an attorney and his client, touching a matter of controversy not tken in suit. It is true, we do not remember any case -decided in Virginia or here, since our separation, which maintains the doctritse; but this isowing to no case occurring which required it, more than to an abandonment of the principle. It would he attended with consequences not easily foreseen, to decide that all the principles that had not been acted upon expressly, either here or in Virginia, since the revolution, were no longer in use. -It would require a series of cases to be shown where such principles might have been, but were not applied, to furnish sufficient evidence of disuse, before we ought t« disregard any settled principle of law or equity.
It has been insisted that such a contract cannot be maintenance in an attorney, unless he supports the suit in whole or in part, at his costs, and that the services and skill of an attorney, counsel or solicitor, may be thus employed, and rendering them as a consideration for such a contract, cannot make it champerty. It is true, some contracts between counsel and client, have been set aside in equity, as unconscientious, on the ground of the uncontrolled influence of counsel overa client, who is-under the pressure of a law suit, or harrassed with its cares and anxieties; but we do not view this as one of that character, and as said in the former opinion, we would not disturb it on that account. But it cannot be conceded, that the skill and Services of counsel, can-hot be considered a consideration for champerty; for the offence rests not so much on what is given for a share in the matter in contest, as it does in stipulating for; and taking that share. The policy of the law is to leave litigants in possession of their entire interest, and not permit others unknown to the record, to form an al-Iiance'with the litigant, and divide the spoil. This might foster suits and disturb the harmonyof society; and with regard to counsel, the practice is supposed to have a tendency to corrupt the profession, and thus pro- *427 „ d^e lasting mischief to the community. And it will be found on an examination of all the oases,- tha| contracts to divide what is'recovered between, counsel and client, have-been always treatedms champerty.
Rhas also been insisted, that to affect, tbe^contracfc with champerty, it is necessary that it should have been made after suit brought. This requisition has beep held necessary to vitiate a contract, because of the undue influence of counsel over a client alone, whether- the- contract is, or is not to divide the- subject of dispute. Rut notwithstanding some definitions of the offence of' chamr perfy cited at the bar, .seem to favor this.assertion, yet-no case has been found, which expressly requires the pen- • dency of the suit a.t the date of the contract, as an essential ingredient. And-Jacob in his Law Dictionary, title Champerty, page 421, expressly lays it-down, and ip support of his position, cites high authority, that “ the givfng part of the lands in suit after the end of it, to a counsellor, for his reward, is not champerty, if there be do precedent bargain relating to such gift;: but-if it had" been agreed between the counsellor and his client, be-fóte action brought, that, he-should have part for his reward, then it would be champerty; and it is dangerous to meddle with any such gift, since it carries with it a strong presumption of champerty.” • If this authority can be relied on, it concludes the question-as to the two p.oints relied on, and last noticed. So that although the first opinion of this court was formed without such aid. from the investigations of'the haras has been since afforded, yet it will stand the test of scrutiny, on the score of authority and of principle.
It is, however, suggested- that Rust ought- not to he permitted to keep,the forty dollars paid by Hardin for him, fSpfeounsel, who, employed first by Rust, argued the cause in. the court below.
It is true,, that the appellee, Hardin^did pay forty dol-. lars to the counsel employed by Rust, to argue the d*ause on its. first trial, as stated in the first opinion; and itis also true, that the services of Hardin, which seem to have been, faithfully and skilfully bestowed, demands liberal compensation, and he ought not to lose either.} nor do we conceive him or his assignee barred by making the' contract, which we have deemed affected' with champerty, or by any thing decided in this court, from the recovery of these demands. ' On the 'contrary, It is *428 ' evident tbathe ought not to lose them: hut the difficult ty in 110w giving him redress, arises from his possessing an adequate remedy at law for that purpose, and the consequent want of jurisdiction in a court of equity,. where the two appellees have substantially the attitude of complainants, although they are nominally defendants in the court below.
Rust agrees in his answer, that he is willing to give-Hardin a liberal compensation, and it is evident from the allegations of the pleadings, as well as the admissions of ltust himself, that he is utterly insolvent, and the slaves in question constitute.the only fund out of which this compensation can be taken. Our decision upon the contract between the parties, virtually sets it aside, and if Rust was a direct complainant for that purpose, there would be but little doubt of the-jurisdiction of a court of .equity, and he would be compelled to do equity before-he got relief. And indeed in the present case, he has measurably come to that attitude, and has become complaisant against both Hardin and Larue, for the purpose of getting clear of the written contract; for after he has answered the inte.rrogatories in the supplemental answer of-Larue, he has inserted numerous interrogatories, both to Hardin and Larue, to which they have responded. Under such circumstances, especially as a remedy at law may be fruitless, we conceive that it will do no violence to the rules of equity, to decree to Hardin, or rather his assignee, Larue, not only the forty dollars paid, with its interest, but also a liberal compensation for his services, not only for his aliention and skill as counsel, but also as agent in attending to the necessary requisitions of the cause in taking depositions, procuring witnesses and attending upon the meetings of commissioners and 'such like servv^fe, and thus the whole controversy will be ended at once, without multiplicity of suits or circuity of action. The ■court below must, therefore, on the rei urn of the cause, proceed to fix a:id ascertain by a commissioner or commissioners appointed for that purpose, a liberal compensation for Hardin’s services, as well as the interest on the aforesaid forty dollars, and decree the amount thereof tobe discounted against the hire of the slaves, if so much hire there bo coming to Rust, and if not, then, tha’tso many of (he slaves shall be sold under the (lireo-üon of the court, as will satisfy said demand.
*429 The former opinion and decree of this court, must, therefore, stand unaltered and affirmed, and the cause tie remanded, with directions to that court, in effectuating the former deciW, also to regard and effectuate the opinion now delivered.